IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA

v.  Criminal No. 3:22cr66 (DJN)

HUGH ELLIS MASON, III,
      Petitioner.

**MEMORANDUM OPINION**

This matter comes before the court on Petitioner Hugh Ellis Mason, III's ("Petitioner") motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. (ECF No. 43 ("§ 2255 Motion").) Petitioner is a federal inmate proceeding *pro se*. For the reasons set forth below, Petitioner's § 2255 Motion will be DENIED.

## I. CLAIMS AND PROCEDURAL HISTORY FOR CLAIM TWO

### A. Petitioner's Claims

In his § 2255 Motion, Petitioner contends that he is entitled to relief on the following grounds:[1]

| | |
|---|---|
| Claim One: | "[I]neffective assistance of counsel by failing to conduct legal research, failing to secure state-court records, and conduct adequate investigations as to his Virginia attempted robbery conviction, and failing to object to the PSR and at his sentencing hearing to the erroneous career offender designation . . . ." (§ 2255 Motion at 4–5.)[2] |
| Claim Two: | Counsel rendered ineffective assistance when he "failed to consult with him regarding filing a notice of appeal after his federal |

---

[1] The Court corrects the capitalization, spelling, and punctuation in the quotations from the parties' submissions. The Court also omits any emphasis used by the parties in the quotations from the parties' submissions. The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system.

[2] Petitioner's statement of his claim continued on to page 5.

> sentencing when he asked his ex-lawyer 'where do we go from here,' thus absent his ex-lawyer's 'deficient performance' he would have specifically instructed his ex-lawyer" to appeal. (*Id.* at 11.)

**B.  Expansion of the Record**

By Memorandum Order entered June 4, 2024, the Court ordered that the record be expanded with respect to Claim Two. (ECF No. 44.) The Court explained as follows:

> An attorney's failure to file a requested appeal is *per se* ineffective assistance of counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483-86 (2000). The United States Court of Appeals for the Fourth Circuit has explained that "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).
> 
> In support of Ground [Two], Petitioner vaguely suggests that he "was upset regarding the lengthy sentence he received and asked Attorney Jose Aponte 'where do we go from here,' however, his ex-lawyer failed to consult with [him] regarding whether to file a Notice of Appeal and the advantages and disadvantages to filing a Notice of Appeal." (ECF No. 43, at 11.) Petitioner then provides little more than the legal standard for an ineffective assistance claim in his submissions. Accordingly, the Court ORDERS Petitioner to file the following submissions, within twenty (20) days of the entry hereof:
> 
> 1.  Copies of any records or correspondence which supports his assertion that he conveyed to counsel his desire to file an appeal.
> 
> 2.  A statement reciting any communications Petitioner had with counsel concerning Petitioner's instructions to counsel regarding an appeal. The statement must include a verbatim account of what Petitioner said to his attorney and the exact responses from his attorney. The statement must recite the date and locations of any conversations that took place. Additionally, Petitioner must identify what efforts he made to ascertain whether his attorney had filed an appeal. Petitioner must explain when and why he first suspected that counsel had not filed an appeal. Such statement must be in affidavit form and/or sworn under penalty of perjury.[3]

---

[3]  An affidavit is a sworn statement of facts made on personal knowledge, and affidavits may be submitted by Petitioner or any other witnesses. There are two alternative ways to submit an affidavit to the Court, one of which must be followed. One way is for the person making the affidavit to sign the affidavit and swear to the

2

> If Petitioner fails to comply with the above directives the matter will proceed on the record before the Court.[4]

(ECF No. 44, at 1–2 (second alteration in original).)

On June 18, 2024, Petitioner filed a letter and a brief affidavit. (ECF No. 45.) By Memorandum Order entered on June 26, 2024, the Court directed the Government to respond. (ECF No. 46.) The Government responded, asserting that Petitioner's claims lack merit, but did not provide an affidavit or sworn statement from former counsel. (ECF No. 49.) Petitioner filed a reply. (ECF No. 50.)

By Memorandum Order entered on March 25, 2025, the Court ordered the record expanded as follows:[5]

1. Within thirty (30) days of the date of entry hereof, the Government SHALL OBTAIN a sworn statement from former counsel, Jose Aponte, regarding his communications with Petitioner concerning the pursuit of an appeal.
2. Additionally, Aponte SHALL PROVIDE the Government with copies of all documents in his possession, including correspondence to and from Petitioner, regarding an appeal.

---

truth of its contents before a notary public. The other way, which does not require a notary public, is for the person making the affidavit to sign the affidavit and certify that he or she signs under penalty of perjury and understands that he or she may be prosecuted if the facts he or she sets forth are untrue.

[4]    The United States need not file a response until further order from the Court.

[5]    In the March 25, 2025 Memorandum Order, the Court recognized that Petitioner's submissions about asking counsel to file an appeal reference dates prior to his actual sentencing. Nevertheless, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." (ECF No. 54 at 2 n.1 (quoting *Flores-Ortega*, 528 U.S. at 480).)

3

>    3.   Within forty-five (days) of the date of entry hereof, the Government SHALL file a further response to Claim Two with the sworn statement from counsel and any accompanying documents or correspondence. The Government SHALL PROPERLY SERVE Petitioner with the same.
>    4.   Within sixty (60) days of the date of entry hereof, Petitioner may file any further reply.

(ECF No. 54 at 2.)

On May 9, 2025, the Government filed its further response with the sworn statement from counsel. (ECF No. 58.) Petitioner filed no reply.

## II.    PERTINENT PROCEDURAL HISTORY

### A.    Guilty Plea Proceedings

On May 17, 2022, a grand jury charged Petitioner with possession with intent to distribute more than 100 grams of a mixture and substance containing a detectible amount of heroin and fentanyl, and a mixture and substance containing a detectible amount of heroin (Count One); and possession of a firearm and ammunition by a convicted felon (Count Two). (ECF No. 1 at 1–2.) On September 29, 2022, Petitioner pled guilty to Count One. (ECF No. 16 ¶ 1.) In his Plea Agreement, Petitioner agreed that "he knowingly waive[d] the right to appeal the conviction and any sentence within the statutory maximum described above[6] (or the manner in which that sentence was determined) . . . ." (*Id.* ¶ 6.)

### B.    Sentencing

#### 1.    Presentence Report and Objections

A Presentence Investigation Report ("PSR") was prepared by the Probation Office. The Base Offense Level for Count One was 32, because the offense involved "at least 3,000 kg but less than 10,000 kg of Converted Drug Weight" under United States Sentencing Guidelines

---

[6]   The mandatory minimum sentence was five years of imprisonment, and the maximum was forty years of imprisonment. (ECF No. 16 ¶ 1.)

4

("USSG") §§ 2D1.1(a)(5) and 2D1.1(c)(4). (ECF No. 22 ¶ 22.) Petitioner received a two-level enhancement for possessing a dangerous weapon and an additional two-level enhancement for maintaining a premise for the purpose of manufacturing or distributing a controlled substance. (*Id.* ¶¶ 23, 24.) Petitioner received a three-level reduction for acceptance of responsibility; therefore, his Total Offense Level was 33. (*Id.* ¶ 32.) Although Petitioner qualified as a career offender, "the otherwise applicable offense level of 36 determined under Chapters Two and Three [was] greater," so his Adjusted Offense Level was 36. U.S.S.G. § 4B1.1(a); (ECF No. 22 ¶ 29.) Therefore, Petitioner's Total Offense Level was not based on the finding that he was a career offender. Because Petitioner qualified as a career offender with respect to his Criminal History Computation, his Criminal History Category was VI. (*Id.* ¶ 51.) Petitioner's guidelines range was 235 to 293 months of incarceration. (*Id.* ¶ 91.)[7]

In his Position on Sentencing, Petitioner's counsel argued that the Court should either sentence Petitioner to the low end of the guidelines at 235 months or should consider Petitioner for a downward variance to 200 months of incarceration. (ECF No. 26 at 2.)

### 2. Initial Sentencing Hearing

During the scheduled sentencing hearing on February 28, 2023, there was some confusion over whether Petitioner qualified as a career offender. The Court placed the Probation Officer on the stand and the Probation Officer agreed that Petitioner was a career offender for the purposes of his Criminal History Category computation, based on a 2004 federal conviction for possession with intent to distribute cocaine base (and a resulting seventy-five month sentence) and 2009 Virginia convictions for attempted robbery, conspiracy to commit robbery and use of a

---

[7]   The Government notes that if Petitioner had not been found to be a career offender, his Criminal History Category would have been IV, and his resulting guidelines range would have been 188 to 235 months of incarceration. (ECF No. 49 at 2.)

firearm in the commission of a felony (and a resulting active sentence of three years). (ECF No. 56 at 7–8; *see* ECF No. 22 ¶¶ 45, 46.) However, due to the confusion over whether Petitioner qualified as a career offender, the Court granted a continuance of the sentencing hearing in order for counsel to research the issue. (ECF No. 56 at 8–13.) In a subsequent order, "the Court ordered the parties to brief the issue of whether the Career Offender Guidelines applied in light of recent decisions calling into question whether a federal drug trafficking conviction would constitute a predicate 'controlled substance offense' for the purposes of the Career Offender guidelines." (ECF No. 49 at 2–3 (citing ECF No. 29).) In his updated Position on Sentencing, counsel for Petitioner indicated that "[a]fter reviewing the appropriate case law with respect to the issue[] discussed during the February 28, 2023 hearing, counsel for the [Petitioner] believes that the Sentencing Guidelines were calculated correctly." (ECF No. 33 at 1; *see* ECF No. 35 at 2–3.)

### 3. Sentencing Hearing

At the beginning of the rescheduled sentencing hearing on May 16, 2023, the Court inquired whether the parties now agreed that the career offender designation applied in the calculation of Petitioner's criminal history. (ECF No. 53 at 3.) Counsel and the Government agreed that that it did and concluded that Petitioner's guideline range was correctly calculated to be 235 to 293 months of incarceration. (*Id.*) The Court asked Petitioner whether he had reviewed the Presentence Report with his attorney; he agreed that he had done so and agreed that there were no errors contained in it. (*Id.* at 10–11.) After hearing argument from counsel, including counsel's motion for a variance, the Court decided to impose a variant sentence of 228 months of incarceration. (ECF No. 40 at 2.)[8]

---

[8]    The original sentencing hearing transcription mistakenly stated that the Court sentenced Petitioner to 258 months. (ECF No. 53 at 34.) The court reporter filed a corrected transcript that

The Court entered judgment on May 22, 2023. (*Id.*) Petitioner filed no appeal. On May 13, 2024, the Court received the present § 2255 Motion from Petitioner. (ECF No. 43.)

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

#### B. Counsel's Failure to Object to Career Offender Finding

In Claim One of his § 2255 Motion, Petitioner alleges "ineffective assistance of counsel by failing to conduct legal research, failing to secure state-court records and conduct adequate investigations as to his Virginia attempted robbery conviction, and failing to object to the PSR and at his sentencing hearing to the erroneous career offender designation . . . ." (ECF No. 43 at 4–5.) As a preliminary matter, Petitioner fails to adequately explain why he believes counsel

---

corrects this error and reflects that the Court sentenced Petitioner to 228 months. (ECF No. 59 at 34.)

7

rendered ineffective assistance by purportedly not conducting unidentified legal research and for not obtaining unidentified state court records. Petitioner identifies no deficiency of counsel or resulting prejudice based on these vague arguments. *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (holding that "vague and conclusory allegations contained in a § 2255 [motion] may be disposed of without further investigation by the district court").

Although Petitioner faults counsel for failing to investigate and object to the career offender enhancement during sentencing, this issue had been resolved prior to sentencing. The Court granted a continuance of the original sentencing hearing for counsel to conduct research on whether Petitioner's prior convictions qualified for the career offender enhancement. After his investigation and research, counsel reached the correct conclusion that they qualified. Counsel determined that "[t]he [2004] conviction pursuant to 21 U.S.C. 841 would be a predicate offense," because even though the conviction "was outside of the 15-year predicate window, the completion of that sentence carried over into the requisite time frame." (ECF No. 35 at 2.)[9] Possession with intent to distribute cocaine certainly qualifies as a "controlled substance offense" under the career offender guideline U.S.S.G. § 4B1.2(b), since it was punishable by more than one year of incarceration. *Cf. United States v. Groves*, 65 F.4th 166, 174 (4th Cir. 2023) ("rul[ing] that a § 841(a)(1) distribution offense is not categorically disqualified from being treated as a 'controlled substance offense' under Guidelines section 4B1.2(b)").

With respect to the state convictions, although Petitioner focuses his attacks on the Virginia attempted robbery conviction and claims that it fails to qualify as a predicate offense, he

---

[9] Petitioner received a 75-month sentence that was later reduced to 61 months. He was released from incarceration on January 6, 2009, but a mere three months later violated his supervised release, was convicted of a supervised release violation in 2012, and was sentenced to an additional 22 months of incarceration. (ECF No. 22 ¶ 45.)

ignores the fact that he was also convicted of use of a firearm in the commission of a felony.[10] Again, counsel correctly concluded that this crime "ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another" under U.S.S.G. § 4B1.2(a) and that Petitioner was sentenced to a term of more than a year for these crimes. (ECF No. 35 at 3); *see United States v. Scott*, No. 3:23-cr-165-HEH, 2025 WL 376043, at *3–4 (E.D. Va. Feb. 3, 2025) (explaining that "[t]ime and again, federal courts in Virginia . . . have found convictions under Virginia Code § 18.2-53.1 to be categorically violent notwithstanding the nature of the underlying felony" and more specifically concluding that the "use of a firearm in the commission of a robbery . . . qualifies as a categorically violent offense" (citations omitted)).

During sentencing, when asked by the Court, Petitioner himself agreed that there were no errors in the Presentence Report. If Petitioner had any objections, he had an opportunity to lodge them at that time. Nevertheless, because the issue of whether Petitioner qualified as a career offender had been resolved prior to sentencing, counsel wisely focused his arguments for a lower sentence elsewhere and was indeed successful in this pursuit, with Petitioner receiving a sentence below the guidelines.[11] Counsel cannot be faulted for failing to advance a previously-resolved

---

[10] Notably, in 2025, the United States Court of Appeals for the Fourth Circuit decided that Virginia robbery is not a crime of violence under § 4B1.2(a)(2). *United States v. Parham*, 129 F.4th 280, 286–88 (4th Cir. 2025).

[11] The Government argued that it was obvious before even charging Petitioner that he was a career offender based on his criminal history. (ECF No. 53 at 16.) The Government explained that it chose not to charge Petitioner with a count of possession of a firearm in furtherance of the commission of drug trafficking under 18 U.S.C. § 924(c), "which certainly there was more than sufficient evidence to charge," because it would have rendered his advisory guideline range 262 to 327 months as a career offender. (*Id.*) Counsel for Petitioner focused his argument for a below-guideline sentence on the fact that Petitioner wanted to plead guilty from the beginning and clearly accepted responsibility, and that a variant sentence was appropriate. (*Id.* at 17, 25.) The Court noted that it valued early acceptance of responsibility significantly, because it demonstrated sincerity, and that counsel's argument was well taken. (*Id.* at 23–24.) The Court also noted the amount of family and friends who had showed up to sentencing and the letters

and meritless argument at sentencing. Moreover, because Petitioner's arguments lack merit, he fails to show any resulting prejudice. Accordingly, Claim One will be DISMISSED.

### C. Alleged Failure to File an Appeal (Claim Two)

In Claim Two, Petitioner argues that counsel rendered ineffective assistance when he "failed to consult with him regarding filing a notice of appeal after his federal sentencing when he asked his ex-lawyer 'where do we go from here,' thus absent his ex-lawyer's 'deficient performance' he would have specifically instructed his ex-lawyer" to appeal. (ECF No. 43 at 11.) In support of his claim, Petitioner submitted an affidavit stating as follows:

> 1. I, Hugh E. Mason, III, state that my ex-lawyer after my federal sentencing on February 28, 2023, I specifically asked Attorney Jose Aponte "where do we go from here," and that "I was upset with the 228-month sentence imposed," however, my lawyer never consulted with me regarding an appeal.
>
> 2. I, Hugh E. Mason, III, assert that on March 02, 2023, I mailed Attorney Jose Aponte a letter requesting that he come visit me to explain the pros and cons of appealing, however, I never heard anything back from him. See Attachment A.

(ECF No. 45 at 1.) Petitioner attaches the letter that he wrote to counsel on March 2, 2023. (ECF No. 45-1.) As the Government correctly asserts, any communications from Petitioner to counsel on February 28, 2023, and March 2, 2023, were after the Court continued his original sentencing, but before Petitioner's actual sentencing occurred on May 16, 2023. Accordingly, at the time of his discussion with and letter to counsel, Petitioner had not yet been sentenced, and counsel would not have had any reason to discuss an appeal about a sentence that had not yet been imposed.

Notably, Petitioner has put forth no evidence that he expressed any interest in appealing to counsel after his May 16, 2023 sentencing besides indicating that he was upset with the 228-

---

received, because this demonstrated that Petitioner has a "support system hopefully that will help him move forward." (*Id.* at 25–26.)

10

month sentence. For this reason alone, Claim Two fails. *Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

Even if Petitioner had stated more than conclusory allegations in support of his claim, Claim Two, nevertheless, lacks merit. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. This determination must take into account "all the information counsel knew or should have known." *Id.* (citation omitted).

If the attorney received no express instruction to file a notice of appeal, and no consultation occurred, a court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* at 478. The prejudice prong requires "that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id.* at 484 (citations omitted).

If consultation about an appeal has occurred, counsel performs deficiently only by failing to follow the defendant's express instructions with respect to an appeal. *Id.* at 478.

At the end of sentencing, the Court specifically informed Petitioner about his right to appeal as follows:

> THE COURT:  All right. Mr. Mason, I have now sentenced you. You have 14 days from today's date to appeal the sentence of the Court. If you want to appeal, it must be in writing. Mr. Aponte will do that for you. Do you understand?

11

      THE DEFENDANT: Yes, sir.

(ECF No. 53 at 37.) Thus, the record reflects that Petitioner heard explicitly from the Court that he had a right to appeal. Counsel avers that "[a]fter the hearing, Mr. Mason was dissatisfied with the sentence that he received. I explained that I did not know that we had much to appeal as he pleaded guilty, but the decision was his." (ECF No. 58-1 ¶ 5.) However, "[a]t no point after that hearing did Mr. Mason apprise me of his wishes to note his appeal." (*Id.* ¶ 6.)[12]

      The Court acknowledges that the discussion referenced by counsel was not the most thorough consultation possible concerning an appeal. However, counsel also knew that Petitioner was aware that he had waived the right to appeal his sentence, because it was lower than the statutory maximum. (*See* ECF No. 16 ¶ 6; ECF No. 58-1 ¶¶ 2–3.) The uncontroverted record demonstrates that counsel consulted with Petitioner about an appeal after his sentencing, because Petitioner was unhappy with his sentence and counsel explained to Petitioner that it was his choice whether to file an appeal. However, Petitioner never expressly indicated to counsel that he wanted to file an appeal. Because consultation occurred and Petitioner never expressed his desire to appeal, counsel was not deficient for failing to file an appeal. *Flores-Ortega*, 528 U.S. at 478. Claim Two therefore lacks merit and will be DISMISSED.

---

[12]     While counsel also points out that the letter Petitioner references sending to counsel about an appeal was sent two months prior to sentencing, counsel avers that he did not receive that letter. (ECF No. 58-1 ¶ 7.)

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's claims will be DISMISSED. The § 2255 Motion (ECF No. 43) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED. An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Petitioner.

                                              /s/
                                      David J. Novak
                                      United States District Judge

Richmond, Virginia
Dated: July 31, 2025